IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ORVILLE W. MURPHY,

     Plaintiff,

v.                                            No. CIV 09-0907 MV/LAM

WARDEN TERRY, et al.,

     Defendants.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

     **THIS MATTER** is before the Court on *Defendants' Motion for Summary Judgment and Supporting Memorandum (Doc. 22)* (hereinafter "*Motion*") and *Defendants' Martinez Report (Doc. 21)* (hereinafter "*Martinez Report*"), both filed on April 5, 2010.  On April 9, 2010, Plaintiff filed his *Response to [D]efendants['] Motion for Summary [J]udgement & Martinez [R]eport (Doc. 23)* (hereinafter "*Response*")) and, on May 20, 2010, Defendants filed *Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment and "Martinez Report" (Doc. 26)* (hereinafter "*Reply*").  In addition, Plaintiff filed what appears to be a supplement to his *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (Doc. 1)* (hereinafter "*Complaint*").  *See Matter of Civil Rights Complaint P[u]rsuant to 42 U.S.C. § 1983 (Doc. 15)* (hereinafter "*Supplemental Complaint*").  Plaintiff brought this action against "Warden Terry & Frawner" and

---

[1] **Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

"MTC Otero County Processing Center," alleging that they violated some of his constitutional rights. *Complaint (Doc. 1).*

Chief United States District Judge Martha Vázquez referred the claims raised in the *Complaint (Doc. 1)* to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. *See Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, and Immigration Habeas Corpus Proceedings (Doc. 9).* Having considered the parties' submissions, relevant law, and the record in this case, the undersigned, for the reasons set forth below, makes the following recommendations:

(1)    That *Defendants' Motion for Summary Judgment and Supporting Memorandum (Doc. 22)* be **GRANTED**, and Plaintiff's claims against Defendant Terry and Defendant James Frawner be dismissed **with prejudice**, and that judgment be entered in favor of Defendant Terry and Defendant James Frawner;

(2)    That Plaintiff's claim that his constitutional rights were violated because he was not given an opportunity to participate in Rastafarian religious services should be dismissed **without prejudice**; and

(3)    That Plaintiff's claims against his "intended defendant," Assistant Warden Karl Frawner,  be dismissed **without prejudice**, and that Plaintiff should be given **thirty (30) days** from entry of an order adopting this recommended disposition to file an amended complaint to make valid claims against Assistant Warden Karl Frawner.

*Background*

Plaintiff is an immigration detainee being held at the Otero County Processing Center (hereinafter "OCPC") pending his deportation. ***Complaint*** *(Doc. 1)* at 1 and 13; ***Martinez Report*** *(Doc. 21)* at 1-2. OCPC is operated by Management and Training Corporation (hereinafter "MTC") pursuant to a contract with Otero County, which owns the facility, and Otero County, in turn, contracts with United States Immigration and Customs Enforcement (hereinafter "ICE") to house illegal aliens pending their deportation. *See **Martinez Report** (Doc. 21)* at 1-2. Plaintiff is proceeding *pro se* and *in forma pauperis*, and he initiated this case on September 17, 2009, by filing his ***Complaint*** *(Doc. 1)*. Plaintiff's ***Complaint*** asserts civil rights claims pursuant to 42 U.S.C. § 1983.

Plaintiff's ***Complaint*** *(Doc. 1)* contains two counts: (1) that Plaintiff's Eighth Amendment rights were violated when he was strip searched with the air conditioner at full power and with female officers yelling orders; and (2) that Plaintiff's "Relig[i]ous rights [were] violated as a Rasta" because: (a) he was served food prepared by women who may have been having their menstrual cycle and "unclean at that time," (b) the restrooms are "not separated [and] there [are] inmates mast[u]rbating in clear view of everyone," (c) "the food is never served hot," and (d) there are no religious services provided for his Rastafarian religion. ***Complaint*** *(Doc. 1)* at 3. Plaintiff asks for monetary damages in the amount of $30,000,000 for these violations. *Id.* at 5.

Defendants state, *inter alia*, in their motion for summary judgment, with affidavits to support their undisputed facts, that: (1) no strip searches have been conducted at the OCPC; (2) at OCPC, MTC adheres to strict policies and procedures for conducting strip searches; (3) ICE approved MTC's policy for strip searches at OCPC; (4) OCPC maintains sanitary food practices; (5) OCPC offers detainees with religious dietary restrictions the opportunity to participate in a "Common Fare

Menu Program," in which Plaintiff participated; (6) the "Common Fare Menu Program" is approved by the Immigration and Naturalization Service (hereinafter "INS"), the Federal Bureau of Prisons, and ICE; and (7) MTC complies with INS Detention Standards for offering detainees the opportunity to practice their religion. *Motion (Doc. 22)* at 2-3; *Martinez Report (Doc. 21)* at 8.  In addition, Defendant James Frawner states that he is the Warden of the Otero County Prison Facility, "a wholly different facility from OCPC," and that "Warden James Frawner is not associated with OCPC." *Id.* at 4.  For these reasons, Defendants ask that Plaintiff's claims be dismissed with prejudice. *Id.* at 6.

### *Legal Standard for Summary Judgment*

A court may grant summary judgment if a moving party demonstrates that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  Once this initial burden is met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmoving party. *Id.* at 671.  The nonmoving party may not rest on his pleadings, but must set forth specific facts showing there is a genuine issue for trial. *See Applied Genetics Int'l., Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also* Fed. R. Civ. P. 56(e).  "'[W]here the non[]moving party will bear the burden of proof at trial on a dispositive issue,' that party must 'go beyond the pleadings' and 'designate specific facts' so as to

'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F. 3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Supporting and opposing affidavits must be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated in the affidavit. *See* Fed. R. Civ. P. 56(e)(1). Copies of documents, or parts of documents, referred to in an affidavit must be sworn or certified and either attached to, or served with, the affidavit. *Id.* Only statements made with actual knowledge will support a motion for summary judgment and a court must disregard statements of mere belief. *See Tavery v. United States*, 32 F.3d 1423, 1427 (10th Cir. 1994). In considering a motion for summary judgment, a court assumes the evidence of the nonmoving party to be true and draws all justifiable inferences in the nonmoving party's favor. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. The essential inquiry on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### Defendant "Warden Frawner"

At the outset, the Court notes that it appears that Plaintiff intends his claims to be brought against Assistant Warden Karl Frawner, not Warden James Frawner. Plaintiff states in his **Complaint** *(Doc. 1)* that he brings his claims against "Warden Frawner" who is employed at OCPC. **Complaint** *(Doc. 1)* at 2. Even though the Court directed the Clerk "to issue notice and waiver of service forms, with copies of the complaint, for Defendants Terry and Frawner" (**Order** *(Doc. 8)*), the Clerk inserted the name "James" in the waiver of service form (*see* **Waiver of the Service of Summons** *(Doc. 12)* (notice and waiver of service form sent to "Warden James Frawner")) and sent

it to OCPC.  James Frawner, however, works at the Otero County *Prison Facility*, not the Otero County *Processing Center*.  *See* ***Martinez Report*** *(Doc. 21-2)* at 1 (Affidavit of Karl Frawner) (stating that Karl and James Frawner are brothers, that James Frawner is the Warden of the Otero County Prison Facility, and that Karl Frawner is the Assistant Warden at OCPC).[2]  In his ***Response***, Plaintiff acknowledges that "it is safe to say Karl Frawner . . . is assistant Warden . . . of [OCPC]." ***Response*** *(Doc. 23)* at 1.  Because it is undisputed that James Frawner is not a proper party to this case, the Court recommends that Defendant James Frawner's motion for summary judgment be granted in his favor and that Plaintiff's claims against Warden James Frawner be denied *with prejudice*.  While the Court does not have jurisdiction over Karl Frawner since he has not been properly served, the Court finds, as more fully explained below, that Plaintiff has failed to allege sufficient facts that would render Karl Frawner liable for Plaintiff's claims as presented in his complaint even if Karl Frawner had been properly served -- indeed Plaintiff has made no allegations whatsoever against Karl Frawner other than that he is essentially in the chain of command at OCPC. Had Defendants filed an answer on Karl Frawner's behalf, as they did in *Cordero v. Terry, et al.*, No. CV 09-1089 MCA/GBW,[3] the Court could recommend disposing of Plaintiff's claims against Karl Frawner in this proposed findings and recommended disposition.  However, because the Court cannot insert Karl Frawner as a party into this case, the Court recommends that Plaintiff's claims against Assistant Warden Karl Frawner be denied *without prejudice* and that Plaintiff be given the

---

[2]Nevertheless, counsel for Defendants signed the waiver of service form and filed an Answer on behalf of Warden James Frawner, stating that James Frawner is not the Warden at OCPC.  *See* ***Waiver of the Service of Summons*** *(Doc. 12)* and ***Defendant Frawner's Answer to Civil Rights Complaint*** *(Doc. 14)*.

[3]In *Cordero*, a similar complaint was filed against "Warden Terry & Frawner," and the Clerk again inserted the name "James" as the warden at OCPC in the waiver of service form.  *See Documents 1* and *8* filed in No. CV 09-1089 MCA/GBW.  In that case, however, Karl Frawner signed the waiver of service form, and counsel for the defendants (who is the same counsel for Defendants in this case) entered an appearance on behalf of "Assistant Warden Karl Frawner," and filed an answer on behalf of Karl Frawner.  *See Documents 8, 9* and *10* filed in No. CV 09-1089 MCA/GBW.

opportunity to amend his **Complaint** to assert appropriate claims, if any exist, against Assistant Warden Karl Frawner, as long as those claims are consistent with the analysis of Plaintiff's claims set forth herein.  If Plaintiff does so, the Court will direct the Clerk to serve Assistant Warden Karl Frawner with Plaintiff's amended complaint.

### Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (hereinafter, "PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Even where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available.  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  Defendants state in their ***Motion (Doc. 22)*** and ***Martinez Report (Doc. 21)*** that Plaintiff did not submit any grievances concerning his claims.  ***Motion (Doc. 22)*** at 2-4, ***Martinez Report (Doc. 21)*** at 3 and 7-9.  Plaintiff states that he "did not send a detainee request concerning the search because the defendants would not have done anything about it." ***Response (Doc. 23)*** at 1.  Plaintiff does not contend that he submitted any grievances concerning his other claims.  Defendants, however, do not contend that Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies.  This may be because the Tenth Circuit has found that an immigration detainee is not a "prisoner" within the scope of the PLRA and, therefore, the requirements of the PLRA do not apply to Plaintiff because he is being held pending his deportation.  *See Cohen v. Delong*, Nos. 09-1218, 09-1078, 09-9519, 2010 WL 1049848 at *1 n.2 (10th Cir. March 23, 2010) (unpublished) ("The [PLRA] does not apply to alien detainees who are in immigration custody.") (citations omitted); *Cohen v. Clemens*, No. 08-1394, 321 Fed. Appx. 739, 742, 2009 WL 921156 (10th Cir. April 7, 2009) (unpublished)

(same); *Abiodun v. Mukasey*, Nos. 07-1266, 07-1401, 264 Fed. Appx. 726, 730 n.2, 2008 WL 360604 (10th Cir. Feb. 11, 2008) (unpublished) (same).  Because the PLRA does not apply to Plaintiff, the Court will consider Plaintiff's claims on the merits even though he did not exhaust his claims at the administrative level.

### 1.  Strip Search Claim

As a preliminary matter, the Court notes that because Plaintiff appears in this case *pro se*, the undersigned construes his pleadings and submissions liberally, holding them to a less stringent standard than is required of a party represented by counsel.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Plaintiff's first claim is that his Eighth Amendment rights were violated on April 8, 2009, when he was strip searched in a room with the air conditioner at full power and with female officers yelling orders. *Complaint (Doc. 1)* at 2-3.  Plaintiff states that "Sgt. Ruiz came to the room and said who destroyed the log book step forward, no one did, so he said everyone will be punished for the d[e]struction of the log book."  *Id.* at 3.  Plaintiff states that Sergeant Ruiz is employed by Defendants.  *Id.*  In his *Response*, Plaintiff also states that on the day he was strip searched, Defendant Terry "was called to the location by one L[i]eutenant Ruiz who suggested that all privil[e]ges be taken from C6 because the log[]book was d[e]stroyed," and that Defendant Terry stated "that they can[']t further punish us because it was their fault that the dorm[i]tory was left unattended." *Supplemental Complaint (Doc. 15)* at 2-4.

Defendants state that MTC "adheres to strict internal policies and procedures, which require a predetermination that there is a reasonable suspicion that a detainee is in possession of contraband or weapons and that the Warden of OCPC approve the strip search before a strip search may be performed." *Motion (Doc. 22)* at 2 (citing Assistant Warden Karl Frawner's affidavit, *Martinez Report (Doc. 21-2)* at 2-3, ¶ 7).  Karl Frawner further states in his affidavit that he has been

employed by MTC as the Assistant Warden at OCPC, a position he has held throughout Plaintiff's period of detention, and that the alleged strip search of Plaintiff could not have occurred because there have been no strip searches since he came to the facility. *Martinez Report (Doc. 21-2)* at 1-2, ¶¶ 2, 7.

To succeed on a complaint brought pursuant to 42 U.S.C. § 1983, a plaintiff must allege some personal involvement by the defendant in the constitutional violation. *See Meade v. Grubbs*, 841 F.2d 1512, 1527-28 (10th Cir. 1988). To establish a supervisor's liability under § 1983, Plaintiff must show that "an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Id.* (citations and internal quotation marks and brackets omitted). Here, Plaintiff has failed to establish an affirmative link between the alleged strip search and any personal involvement, including the exercise of control or direction, or failure to supervise, by Defendants. *See Dubbs, et al. v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (explaining that "a private actor cannot be held liable solely because it employs a tortfeasor") (citation, internal quotation marks, and emphasis omitted). Plaintiff's statement that Defendant Terry was called to the location of the strip search on the day it allegedly occurred fails to rise to the level of accusing Defendant Terry of any participation, direction, or control over the alleged search. Furthermore, Plaintiff makes no allegations against either Defendant James Frawner or his intended "defendant" Karl Frawner regarding the strip search. While Plaintiff alleges personal involvement by unnamed "guards" and implies involvement in the decision to conduct the alleged strip search by "Sergeant"/"Lieutenant" Ruiz (*see Complaint (Doc. 1)* at 2-3; *Supplemental Complaint (Doc. 15)* at 3), Plaintiff makes no attempt to name these guards or even Ruiz as defendants, and instead names only Defendants Terry and Karl Frawner. For the reasons stated herein, the undersigned recommends that Defendants'

motion be granted as to Plaintiff's claim that Defendants violated Plaintiff's Eighth Amendment rights. Because the Court is recommending dismissing Plaintiff's claims against Karl Frawner without prejudice, if Plaintiff chooses to file an amended complaint against Karl Frawner, he would need to allege facts that Karl Frawner participated in, exercised control over, or directed the strip search, or that he failed to supervise those who conducted the strip search.

### 2. Religious Rights Claims

Plaintiff's second claim is that his "Relig[i]ous rights [were] violated as a Rasta" because: (1) he was served food prepared by women who may have been having their menstrual cycle and, therefore, "unclean at that time," (2) the restrooms are "not separated [and] there [are] inmates masturbating in clear view of everyone," (3) "the food is never served hot," and (4) there are no religious services provided for his religion. *Complaint (Doc. 1)* at 3. Defendants state in response that the OCPC maintains sanitary food practices and offers detainees with religious dietary restrictions the opportunity to participate in a "Common Fare Menu Program," which provides hot entrees at least three times a week. *Motion (Doc. 22)* at 3. Further, Defendants state that Plaintiff participated in the Common Fare Menu Program. *Id.* (citing Karl Frawner's affidavit, *Martinez Report (Doc. 21-2)* at 3, ¶ 9). Finally, Defendants state that OCPC complies with prison standards for offering detainees the opportunity to practice their religion. *Motion (Doc. 22)* at 3. In his *Response*, Plaintiff states that because of the custom of his religion, women should not handle his food when they have their menstrual cycle, and that his "food should be pre-packaged and microwaved just like the Kosher food is served." *Response (Doc. 23)* at 2. He also states that he has made a verbal request to the Chaplain for Rastafarian religious services, but that "his answer was they could not find anyone from the outside to conduct such services." *Id.* at 3.

-10-

In order to state a claim that Defendants violated Plaintiff's right to free exercise of religion under 42 U.S.C. § 1983, Plaintiff "must adequately allege that [D]efendants substantially burdened his sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation and internal quotation marks and brackets omitted).  However, a governmental policy that burdens an inmate's religious beliefs may be constitutional if it is reasonably related to legitimate penological interests.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987).   In determining whether a governmental policy is reasonably related to a legitimate penological interest, a court must consider: (1) whether there is a logical connection between the prison regulation and the asserted penological interest; (2) whether alternative means of exercising the religious right in question remain open to inmates; (3) the impact that the accommodation of the right in question would have on guards, other prisoners, and on the allocation of prison resources; and (4) whether any alternatives exist that would accommodate the right at *de minimus* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

### a.  Religious Diet Claim

Defendants contend that Plaintiff participates in the OCPC's "Common Fare Menu Program" to accommodate his religious dietary restrictions (***Motion (Doc. 22)*** at 3), and the record before the Court supports that contention (*see **Martinez Report** (Doc. 21-2)* at 3, ¶ 9 (Affidavit of Karl Frawner stating that Plaintiff was given the opportunity to participate in the Common Fare Program); ***Martinez Report (Doc. 21-14)***, Exhibit K at 3 (Detainee Request from Plaintiff dated January 17, 2009, requesting a Rastafarian vegetarian diet); and ***Martinez Report (Doc. 21-4)***, Exhibit K at 8 (Detainee Request from Plaintiff dated November 9, 2009, requesting a replacement for his "common fare [ID]")).  Plaintiff has not disputed that he participates in this program.  The Common Fare Program provides that "[d]etainees whose religious beliefs require adherence to

-11-

particular dietary laws will be referred to the Chaplain [who, a]fter verifying the religious dietary requirement . . . , will issue specific written instructions." ***Martinez Report*** *(Doc. 21-4)*, Exhibit B at 16 (INS Detention Policy regarding "Religious/Special Diets"). The policy for the Common Fare Program provides that "[h]ot entrees shall be offered three times a week and shall be purchased precooked, heated in their sealed containers, and served hot," and that "[o]ther cooking is not permitted in the common-fare program." *Id.* at 17.

The Common Fare Program provides that Plaintiff's requests regarding his food preparation and temperature would be accommodated if those requests were found to be necessary religious dietary restrictions; however Plaintiff fails to present any evidence that he has made such requests to the Chaplain or Defendants or that any such requests were rejected. For that reason, Plaintiff fails to show that Defendants have substantially burdened Plaintiff's religious beliefs *See Gallagher*, 587 F.3d at 1070 (rejecting the plaintiff's allegation that his kosher diet was violated because his food was not prepared according to kosher requirements because the plaintiff did not allege that the improper food preparation was a prison policy or that any of the defendants deliberately contaminated the kosher utensils or repeatedly violated kosher requirements); *see also Tait v. CCA/Eden Detention Center*, No. 6:01-CV-006-BG, 2002 U.S. Dist. LEXIS 529 at *6 (N.D. Tex. Jan. 11, 2002) (unpublished) (holding that the common fare meal "is a reasonable accommodation for religious dietary requests" for a Rastafarian diet and that the plaintiff's "subjective belief that other religions receive different meals or more accommodation is not enough to state a constitutional violation"). Plaintiff fails to present any evidence that his religious dietary needs are not being met by the Common Fare Program. Plaintiff's allegations regarding how his food is handled seem to be addressed by the OCPC's policy regarding the Common Fare Program; specifically that the food in this program is not handled or prepared by anyone, other than being heated in sealed containers,

and that no other cooking is permitted in the program. To the extent that Plaintiff's meals may on occasion be handled by women on their menstrual cycles, the Court finds no support that this rises to the level of a substantial burden on Plaintiff's religious beliefs. *See Strope v. Cummings*, No. 09-3306, 2010 WL 2294524 at *2-3 (10th Cir. June 9, 2010) (unpublished) (explaining that the flat denial of a religious diet was an actionable claim for a substantial burden on religious beliefs, but sporadic incidents in which an inmate's meal was rendered inedible was no more than an inconvenience to an inmate's religious practices). The Court, therefore, recommends that Plaintiff's claims that his religious rights were violated because women may be involved in preparing his food and his food was not served hot be dismissed with prejudice.

### b. Restrooms Claim

Plaintiff's claim that his religious rights were violated because the restrooms at OCPC are not separated and there are inmates masturbating in clear view of everyone does not allege sufficient facts to support a claim against Defendants. Plaintiff again fails to allege any personal involvement by Defendants in the lack of separation in the restrooms, including exercise of control or direction, or failure to supervise, as is required to state a claim under 42 U.S.C. § 1983. *See Meade*, 841 F.2d at 1527-28 (to establish a supervisor's liability under § 1983, Plaintiff must show that "an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise") (citations and internal quotation marks and brackets omitted); *see also Hayes v. Marriott*, No. 99-1051, 194 F.3d 1320, 1999 WL 791146 at *2 (10th Cir. Oct. 5, 1999) (unpublished) (upholding the district court's ruling dismissing prisoner's claim that the lack of a shower curtain covering the entry to his bathroom violated his constitutional rights because: (1) there was no constitutional deprivation, and (2) the named defendants did not personally participate in the removal of the shower curtain). Therefore,

-13-

the undersigned recommends that Defendants' motion be granted as to Plaintiff's claim that his constitutional rights were violated as a result of there being no separation of the restrooms.

### c. Religious Services Claim

Finally, Plaintiff's claim that Defendants violated his constitutional rights because OCPC does not provide Rastafarian religious services also fails.  Defendants state that Plaintiff has not raised any formal administrative grievances regarding denial of his religious practice, and notes that Plaintiff has made several informal requests regarding religious matters, all of which were met by OCPC.  *See Martinez Report (Doc. 21)* at 8-9.  In addition, the policy followed by OCPC regarding religious programs states that "[t]he Chaplain will coordinate religious services to the benefit of all religions," and that "[s]pecific requests for religious accommodation will be reviewed by the Chaplain who will report to the Warden his recommendations, and reasons."  *Martinez Report (Doc. 21-10)*, Exhibit G at 2.

Because Plaintiff fails to allege that Defendants maintain a policy that prevents Plaintiff from participating in religious services, the Court recommends that Plaintiff's claim against Defendants for failing to provide Rastafarian religious services be dismissed.  *See Meade*, 841 F.2d at 1527-28 (to establish a supervisor's liability under § 1983, Plaintiff must show that "an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise") (internal quotations, brackets and citations omitted).  However, since Plaintiff states in his *Response* that he made a verbal request for Rastafarian services to the Chaplain, which was rejected because the Chaplain stated that a person could not be found to conduct such services (*Response (Doc. 23)* at 3), the undersigned recommends that this claim be dismissed without prejudice as to other potential defendant[s] because it appears that Plaintiff may be able to state a claim for relief if he can show that the Chaplain's denial of his

request for religious services was not reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (setting forth the factors the Court should consider in determining whether a governmental policy is reasonably related to a legitimate penological interest); *Mitchell*, 92 WL 401593 at *3 (instructing the district court on remand that it should either give the plaintiff the opportunity to amend his complaint to name as defendants the parties responsible for the alleged incident, or should dismiss his claim without prejudice); *see also Reynoldson*, 907 F.2d at 126 ("If it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.") (citation and internal quotation marks and brackets omitted). The undersigned, therefore, recommends that Plaintiff's claim that he was not given reasonable opportunities to exercise his sincerely-held religious beliefs be dismissed without prejudice.

## *Conclusion*

The Court finds that there are no genuine issues of material fact with regard to Plaintiff's claims against Defendant Terry and Defendant James Frawner and, therefore, Plaintiff's claims against them should be dismissed with prejudice. The Court further finds that Plaintiff's claims against Karl Frawner should be dismissed without prejudice, and Plaintiff should have an opportunity to file an amended complaint to allow Plaintiff to allege personal involvement by Karl Frawner in the alleged violations of Plaintiff's constitutional rights. Accordingly, ***Defendants' Motion for Summary Judgment and Supporting Memorandum*** *(Doc. 22)* should be granted, judgment should be entered in favor of Defendant Terry and Defendant James Frawner, Plaintiff's claim that his constitutional rights were violated because he was not given an opportunity to participate in Rastafarian religious services should be dismissed without prejudice, and Plaintiff

should have an opportunity to file an amended complaint to make valid claims against Karl Frawner consistent with the analysis herein.

### <u>RECOMMENDED DISPOSITION</u>

For the foregoing reasons, the undersigned recommends that:

(1)   ***Defendants' Motion for Summary Judgment and Supporting Memorandum (Doc. 22)* be GRANTED** and Plaintiff's claims against Defendant Terry and Defendant James Frawner be dismissed **with prejudice**;

(2)   Judgment be entered in favor of Defendant Terry and Defendant James Frawner;

(3)   Plaintiff's claim that his constitutional rights were violated because he was not given an opportunity to participate in Rastafarian religious services should be dismissed **without prejudice**;

(4)   Plaintiff's claims against his "intended defendant" Assistant Warden Karl Frawner be dismissed **without prejudice**, and Plaintiff should be given **thirty (30) days** from entry of an order adopting this recommended disposition to file an amended complaint to make valid claims against Assistant Warden Karl Frawner; and

(5)   ***If Plaintiff does not file an amended complaint within that time period, that final judgment be entered in this case.***


_Lourdes A. Martinez_
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**